UNITED STATES DISTRICT COURT
DISTRICT OF PUERTO RICO

| | |
|---|---|
| WALTER MANGUAL-SANTIAGO,<br><br>Petitioner,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br><br>Respondent. | Civil No. 10-1756 (JAF)<br><br>(Crim. No. 03-361) |

**OPINION AND ORDER**

Petitioner brings this pro-se petition under 28 U.S.C. § 2255 for relief from a federal court conviction. (Docket No. 1.) Respondent opposes (Docket No. 3), and Petitioner replies (Docket No. 4).

**I.**

**Factual History**

The facts of the trial underlying this petition are detailed in the First Circuit's disposition of Petitioner's direct appeal, United States v. Mangual-Santiago, 562 F.3d 411 (1st Cir. 2009). We note here only points salient to the instant petition.

On January 17, 2007, Petitioner was convicted of two counts of conspiracy, each lasting from 1991 to 2002: (1) to possess with intent to distribute cocaine and heroin; and (2) to commit money laundering. (Docket No. 1 at 2, 4.) He was sentenced to a term of imprisonment of 324 months. (Id. at 5.)

Petitioner was indicted on those charges on December 6, 2003, but he was a fugitive from justice until he was apprehended on February 28, 2006, at his residence in Orlando, Florida. Mangual-Santiago, 562 F.3d at 419. His person and home were searched incident to that arrest, and the executing authorities found, among other things, narcotics and false identifications. Id.

In preparation for trial, on August 7, 2006, the court appointed Petitioner counsel, Benjamín Ortiz-Belaval. (Crim. No. 03-361, Docket No. 786.) At a status conference on September 14, 2006, the parties informed the court that they had exchanged discovery, and the court granted Petitioner twenty days to review it. (Id., Docket No. 808.) On October 27, 2006, a second status conference revealed that the parties had not yet reached a plea agreement, and the court set trial for November 13, 2006. (Id., Docket No. 823.) On November 9, 2006, Petitioner moved to appoint new counsel; the trial court granted Ortiz-Belaval's withdrawal on November 27, gave Petitioner until December 15 to inform the court of new counsel, and reset the trial for January 8, 2007. (Id., Docket Nos. 838, 841.) New counsel, Luis R. Rivera-Rodríguez, appeared on December 15 and moved to continue the trial, citing his need for more time to acquaint himself with the facts of the case and also his preplanned holiday vacation. (Id., Docket No. 846.) On January 3, 2007, the trial court denied the motion to continue, and trial began as scheduled. (Id., Docket Nos. 848, 862.)

Petitioner unsuccessfully appealed his conviction. See generally Mangual-Santiago, 562 F.3d 411. He argued, among other things, that the trial court's failure to grant his motion to continue to allow Rivera-Rodríguez to prepare for trial denied him effective counsel. Id. at

429–31. He also renewed an argument he had made during trial that the evidence showed a hiatus of criminal activity on his part and on that of his coconspirators lasting from 1994 to 1996. Id. at 421–26. Given that evidence, he argued that what was charged as one long conspiracy was actually two separate conspiracies. Id. Further, he argued that the first conspiracy was barred by the statute of limitations and that evidence of criminal activity during the first conspiracy was, therefore, inadmissible. Id. The First Circuit rejected both arguments and affirmed Petitioner's conviction and sentence. See id. at 417.

**II.**

**Standard for Relief Under 28 U.S.C. § 2255**

A federal district court has jurisdiction to entertain a § 2255 petition when the petitioner is in custody under the sentence of a federal court. See 28 U.S.C. § 2255. A federal prisoner may challenge his or her sentence on the ground that, inter alia, it "was imposed in violation of the Constitution or laws of the United States." Id.

On collateral review, a petitioner may not relitigate issues that were decided on direct appeal. See Singleton v. United States, 26 F.3d 233, 240 (1st Cir. 1993). In addition, a petitioner's "failure to raise a claim in a timely manner at trial or on appeal constitutes a procedural default that bars collateral review, unless the [petitioner] can demonstrate cause for the failure and prejudice or actual innocence." Berthoff v. United States, 308 F.3d 124, 127–28 (1st Cir. 2002). This bar does not apply to claims of ineffective assistance of counsel. See Massaro v. United States, 538 U.S. 500, 509 (2003).

A petitioner is entitled to an evidentiary hearing unless the "allegations, even if true, do not entitle him to relief, or . . . the movant's allegations need not be accepted as true because they state conclusions instead of facts, contradict the record, or are inherently incredible." Owens v. United States, 483 F.3d 48, 57 (1st Cir. 2007) (quoting David v. United States,134 F.3d 470, 477 (1st Cir. 1998)) (internal quotation marks omitted); see also § 2255(b). A petitioner waives any claims he raises perfunctorily. See Cody v. United States, 249 F.3d 47, 53 n.6 (1st Cir. 2001) (deeming waived ineffective assistance claim raised in § 2255 proceeding in perfunctory manner).

## III.

## Analysis

Because Petitioner appears pro se, we construe his pleadings more favorably than we would those drafted by an attorney. See Erickson v. Pardus, 551 U.S. 89, 94 (2007). Nevertheless, Petitioner's pro-se status does not excuse him from complying with procedural and substantive law. See Ahmed v. Rosenblatt, 118 F.3d 886, 890 (1st Cir. 1997).

Petitioner enumerates seven grounds for his claim that his conviction was unconstitutional, each stemming from his assertion that he received ineffective assistance of both trial and appellate counsel. We first provide the standard for ineffective assistance of counsel and then consider each ground Petitioner raises.

### A. Standard for Ineffective Assistance of Counsel

The Sixth Amendment "right to counsel is the right to the effective assistance of counsel." Strickland v. Washington, 466 U.S. 668, 686 (1984) (internal quotation marks

omitted); see U.S. Const. amend. VI. To establish ineffective assistance, a petitioner must show both that his counsel's performance was deficient and that he suffered prejudice as a result of the deficiency. Strickland, 466 U.S. at 686–96. To show deficient performance, a petitioner must "establish that counsel was not acting within the broad norms of professional competence." Owens, 483 F.3d at 57 (citing Strickland, 466 U.S. at 687–91). To show prejudice, a petitioner must demonstrate that "there is a reasonable probability that, but for counsel's unprofessional error, the result of the proceedings would have been different." Strickland, 466 U.S. at 694.

To succeed on a claim of ineffective assistance of counsel, a petitioner must overcome the "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. at 689. Choices made by counsel that could be considered part of a reasonable trial strategy rarely amount to deficient performance. See id. at 690. Counsel's decision not to pursue "futile tactics" will not be considered deficient performance. Vieux v. Pepe, 184 F.3d 59, 64 (1st Cir. 1999); see also Acha v. United States, 910 F.2d 28, 32 (1st Cir. 1990) (stating that failure to raise meritless claims is not ineffective assistance of counsel).

**B. Petitioner's Claims**

**1. Failure to Prepare for Trial**

Under ground one, Petitioner claims broadly that his trial counsel failed to adequately prepare for trial and, therefore, provided him ineffective assistance of counsel. (Docket No. 1 at 7–11.) He claims that counsel's unpreparedness prevented counsel from adequately advising him as to the risks of going to trial—and therefore prevented Petitioner from knowingly

considering his plea options—and from presenting an effective defense at trial. (Id.) We examine ground one in light of ground two, which reads in relevant part: "In the instant claim subjudice, [Petitioner] incorporates his argument at ground one . . . to complain that the gist of counsel's ineffectiveness was the result of the trial court's denial of counsel's motion for a continuance premised upon counsel's admission that he was not prepared to try the case on behalf of [Petitioner]." (Id. at 13.)

We begin with Petitioner's allegations that counsel's pretrial unpreparedness prevented him from pleading guilty.[1] The counsel whom Petitioner claims was unprepared, Rivera-Rodríguez, appeared as counsel on December 15, 2006, taking over for previous counsel, Ortiz-Belaval. Ortiz-Belaval was the attorney who collected and reviewed the government's discovery and advised Petitioner as to a potential guilty plea. (See, e.g., Crim. No. 03-361, Docket No. 823.) Petitioner does not allege that the counsel who handled his plea negotiations, Ortiz-Belaval, was unprepared for trial, but rather claims that the denial of the motion to continue rendered his trial counsel unprepared. (See Docket No. 1 at 13.) We also note that ground seven, Petitioner's more detailed claim regarding his plea agreement, contains no allegation that

[1] Inherent in this claim are Petitioner's more specific allegations regarding counsel's grasp of the strength of the prosecution's case and subsequent ability to adequately advise Petitioner as to a potential plea: Failure to read the government's discovery or otherwise familiarize himself with the facts of the case; failure to conduct a pretrial investigation; failure to subpoena witnesses; failure to realize that the government could introduce evidence of a conspiracy Petitioner maintains was a separate, earlier conspiracy from the one alleged in the indictment—or that the court would not have to instruct the jury that the alleged single conspiracy was actually two; and failure to realize that certain other evidence was admissible, namely evidence of his "bank accounts, purchases of goods and possession of narcotics occurring outside of the period of the charged conspiracy." (Docket No. 1 at 8–9.) To the extent Petitioner claims that these failures also affected trial counsel's performance at trial, we find that their perfunctory mention fails to explain how they prejudiced his trial defense.

counsel was unfamiliar with case facts or evidence. (See id. at 29–31; see also Docket No. 4 at 8–9.) We, therefore, deem spurious Petitioner's claim that counsel's unpreparedness deprived him of a chance to adequately consider his plea options.

We now turn to the evidence Petitioner claims he could have introduced had his counsel been prepared for trial. First, he claims he could have introduced evidence that he "lost his Orlando residence for [his] indigency and inability to pay his property taxes"—evidence he says undermines the government's "puffery of his financial status." Petitioner does not explain when he lost the residence, so we have no basis for judging the relevance of this evidence to the charged conspiracy. Regardless, we find that Petitioner overstates the probative value of the omitted evidence, as the jury heard substantial evidence demonstrating Petitioner's wealth.[2] See, e.g., Mangual-Santiago, 562 F.3d at 427 (noting that the jury heard extensive testimony on Petitioner's significant spending). We, therefore, find no prejudice from the omission of this evidence.

Petitioner next claims he would have introduced evidence that a main government witness, Antonio Robles, testified before the grand jury that he did not know Petitioner but rather only "knew of" Petitioner—evidence he claims contradicts Robles' trial testimony. Upon review of the trial transcript, we find that Petitioner's counsel indeed brought this disparity to the jury's attention. (See Crim. No. 03-361, Trial Tr. 89–91, Jan. 11, 2007 (cross

[2] Furthermore, we presume the omitted evidence was at all times known to Petitioner; Petitioner does not explain how counsel's unpreparedness prevented Petitioner from bringing this evidence to his counsel's attention.

examination of Robles); see also id., Trial Tr. 126, Jan. 16, 2007 (closing arguments).) We, therefore, find no prejudice from the alleged omission of this evidence.

Finally, Petitioner claims that counsel did not prepare him to testify.[3] He does not, however, explain what that testimony would have been or how it would have supported his defense. We, therefore, find no demonstration that this alleged failure prejudiced his defense.

**2. Denial of Motion to Continue Trial**

Under ground two, Petitioner claims that the trial court deprived him of effective assistance of counsel by denying his motion to continue the trial. (Id. at 12–14.) This claim mirrors Petitioner's argument on direct appeal that the trial court's denial of his motion to continue was erroneous because it rendered his counsel unable to prepare for trial. See Mangual-Santiago, 562 F.3d at 429–31. The First Circuit determined that, while erroneous, the denial did not prejudice his trial; it found no showing that the omitted evidence—allegedly omitted due to counsel's unpreparedness—would have aided his defense. Id.

Petitioner now revives this argument, raising new evidence he claims was omitted due to counsel's unpreparedness and would have aided his defense. He also now claims that the failure to prepare prevented counsel from discovering and explaining to Petitioner the risks of going to trial, which in turn caused Petitioner to proceed to trial instead of accepting a plea offer. While these new prejudice arguments appear to be waived given his failure to raise them

[3] Petitioner also alleges under ground one that trial counsel (1) waived a challenge to the validity of a prior conviction the government sought to use in enhancing Petitioner's sentence; (2) waived a meritorious motion to suppress evidence; and (3) failed to adequately apprise Petitioner of the plea offer. (Docket No. 1 at 9–10.) These claims are repeated in the petition, in more detail, under grounds four, five, and seven, respectively (see id. at 19–24, 29–31), and we, therefore, consider them under those grounds below.

on direct appeal, Petitioner claims that ineffective assistance of appellate counsel caused that prejudicial default.[4] (Docket No. 1 at 12.) For reasons detailed above, we disagree. As on direct appeal, Petitioner has failed to demonstrate prejudice from the trial court's ruling. Appellate counsel's failure to raise these additional prejudice arguments therefore indicates neither deficient performance nor prejudice to Petitioner's appeal.

### 3. Inadequate Voir Dire

Under ground three, Petitioner claims that his voir dire was unconstitutionally inadequate and that his counsel was deficient in failing to object to it. (Docket No. 1 at 15–18.) Specifically, he claims that his jury was "selected by a series of exercising peremptory challenges on a sheet of paper, without further inquiry into the biases of the potential jurors or anything resembling such an inquiry into such potential bias." (Id. at 17.) We find this statement clearly contradicted by the transcript of the voir dire.[5] (See generally Crim. No. 03-361, Docket No. 985 at 8–24 (transcript of voir dire).) During voir dire, the trial court questioned the jury pool members as to their potential biases. (Id.) We note that the court has broad discretion in performing a voir dire, see United States v. Pérez-González, 445 F.3d 39, 46–47 (1st Cir. 2006), and may conduct voir dire via group questioning, see Orlando-Figueroa

[4] Petitioner perfunctorily realleges under ground six ineffective assistance of appellate counsel on the basis of counsel's inadequate handling of the challenge to the trial court's denial of the motion to continue. (Docket No. 1 at 28.) We consolidate these separate allegations into the instant discussion of grounds one and two.

[5] Petitioner claims he has never received a copy of the voir dire transcript and requests that he be furnished a copy and then be allowed to revisit this claim before we resolve it. (Docket No. 4 at 4.) We note for Petitioner's convenience that the transcript is available in the criminal docket. (Crim. No. 03-361, Docket No. 985.) Regardless, delaying this proceeding to allow Petitioner to review the transcript would be futile, as we find the voir dire adequate.

v. United States, 229 F.3d 33 (1st Cir. 2000); United States v. Medina, 761 F.2d 12, 19–20 (1st Cir. 1985). Detecting no inadequacy in the court's voir dire, we find no deficiency in counsel's failure to challenge it.

**4. Error in Presentencing Report**

Under ground four, Petitioner claims that his counsel was deficient in failing to move for a revised presentencing report ("PSR"), as it reflected inaccurate criminal history points. (Docket No. 1 at 19.) He notes that the sentencing judge rejected the criminal history points assessed in the PSR. (Id.) Having so noted, Petitioner cannot show prejudice from that error in his PSR, and from his attorney failing to correct it. Indeed, Petitioner's counsel at sentencing successfully argued for the application of fewer criminal history points than that recommended in the PSR. (See Crim. No. 03-361, Sent'g Hr'g Tr.19–24, 34, Apr. 30, 2007.) We, therefore, find no ineffective assistance of counsel in relation to the PSR. To the extent Petitioner nevertheless wishes his PSR to be amended, a § 2255 petition is not the means to do so.

**5. Waiver of Motion to Suppress**

Under ground five, Petitioner claims that his counsel was deficient in failing to pursue the suppression of evidence obtained in violation of his Fourth Amendment rights. (Docket No. 1 at 20–24.) Specifically, he alleges that the evidence found during a protective sweep of his house following his arrest in 2006 was the fruit of an unconstitutional search and should have been excluded as such. He claims that his counsel waived the objection to the admissibility of the evidence by failing to timely file a motion to suppress. (See id. at 22–23 ("While counsel attempted to cure his failure to file a motion to suppress prior to trial by

objecting to the introduction of the evidence seized from the Orlando residence, the Court admonished counsel that counsel failed to file a motion to suppress and could not attempt to file such a later motion to suppress during the trial." (citations omitted).) We find this claim contradicted by the transcript, which reveals that the trial court noted the failure to file a motion to suppress, but went on to consider the suppression issue. (See Crim. No. 03-361, Trial Tr. 64–67, 73.) As counsel raised the issue and received a ruling on its merits, Petitioner cannot show that counsel was deficient for waiving the issue.

Petitioner further claims that his appellate counsel was deficient in failing to appeal the court's erroneous admission of the evidence. (See id. at 20.) Petitioner's argument fails because the First Circuit already found that the evidence found incident to the 2006 arrest did not prejudice his defense, even if it was erroneously admitted. See Mangual-Santiago, 562 F.3d at 425–26 (finding that jury instructions and strength of government's case against Petitioner rendered nonprejudicial evidence found incident to the 2006 arrest). Therefore, appellate counsel would not have prevailed on this argument, and he was not deficient for failing to raise it.

**6. Deficient Performance of Appellate Counsel**

Under ground six, Petitioner alleges generally that his appellate counsel was deficient in handling his appeal. (Docket No. 1 at 25–28.) He claims that the First Circuit admonished his appellate counsel's deficient performance throughout its opinion resolving his direct appeal. He proceeds to list seven clarifying points and footnotes the First Circuit wrote in its opinion, deeming them notes of his appellate counsel's deficient performance. (See id.; Docket No. 4

at 7–8.) Upon reviewing the First Circuit's opinion, we find that these points were merely clarifications regarding the scope of the appeal and contained no commentary as to appellate counsel's performance. We also note generally that these arguments are raised in a perfunctory manner with little development beyond parroting what the First Circuit wrote. Nevertheless, we review each point in turn.[6]

### a. Money Laundering Conspiracy as Two Separate Conspiracies

The First Circuit noted that Petitioner challenged only his narcotics conspiracy, and not his money laundering conspiracy, as two separate conspiracies. Petitioner deems this deficient performance by appellate counsel. (Docket No. 1 at 26.) In order to prevail on this argument, Petitioner would have to show that appellate counsel's deficiency actually prejudiced his appeal. He fails, however, to develop that argument. He merely states that the money laundering conspiracy was two conspiracies rather than one single conspiracy, offering no support for that assertion. He has therefore failed to make the requisite showing of prejudice.

### b. Waiver of Affirmative-Withdrawal Argument

Petitioner alleges deficient performance in appellate counsel's waiver of Petitioner's argument that he affirmatively withdrew from the conspiracy. (Docket No. 1 at 26–27.) He does not elaborate, for example as to how trial evidence supported that argument or how the argument would have affected the viability of his conviction. We, therefore, find no showing of prejudice.

---

[6] We discuss here only one through six of the seven points listed, because we have already treated the seventh. See supra note 4.

**c. Failure to Introduce Grand Jury Testimony**

Petitioner alleges that his appeal was prejudiced by trial counsel's failure to introduce grand jury testimony that would have aided his appellate argument that two alleged coconspirators retired from drug dealing in 1994. (Docket No. 1 at 27.) We note that this appears to be a claim of trial, rather than appellate, counsel's deficiency. Regardless, Petitioner fails to explain how the omitted testimony would have made a difference in his defense and appeal. The coconspirators' 1994 break from drug dealing was made clear in the trial transcript and was recognized by the First Circuit. We, therefore, find no prejudice in counsel's alleged failure to introduce the grand jury testimony.

**d. Failure to Argue that Time-Barred Conspiracy Increased Sentence**

Petitioner claims that appellate counsel's failure to argue that the allegedly time-barred conspiracy increased his sentence, and that he was, therefore, prejudiced by the erroneous admission of evidence of the earlier conspiracy. But he does not explain whether or how evidence of the allegedly "earlier" conspiracy increased his sentence. He, therefore, shows no prejudice from counsel's failure to make that argument.

**e. Failure to Show Evidence of First Conspiracy Inadmissible**

Petitioner claims that appellate counsel was deficient for failing to show that evidence of the first conspiracy was inadmissible. He does not explain why the evidence was inadmissible. We also note that the First Circuit expressed doubt that the evidence would have been inadmissible simply because it fell outside the statute of limitations or even if it constituted

a conspiracy separate from the one properly charged. See Mangual-Santiago, 562 F.3d at 423–24. We, therefore, find that Petitioner shows no prejudice for this alleged failure.

**f. Failure to Challenge Admissibility of Tax Records**

Petitioner claims that he was "prejudiced on appeal where appellate counsel failed to challenge the admissibility of evidence of [Petitioner's] failure to file income tax reports as required by Grunewald v. United States, 353 U.S. 391 (1957)." (Docket No. 1 at 27.) This claim comes from the First Circuit's note in Petitioner's case regarding its earlier holding in United States v. Upton, 559 F.3d 3, 11–12 (1st Cir. 2009), that "failure to file [a] required tax return constituted evidence of concealment and an act in furtherance of money laundering." Mangual-Santiago, 562 F.3d at 429. During that discussion, the First Circuit noted, "At least one member of this court believes that our holding in Upton is in tension with the Supreme Court's holding in [Grunewald] . . . ." Id. at 429 n.13 (citing Upton, 559 F.3d at 17 (Lipez, J., dissenting)). The Petitioner, in sum, argues that his counsel should have made an argument contrary to First Circuit precedent due to doubts expressed in a dissenting opinion regarding the majority's alignment with Supreme Court precedent. We find that it was reasonable appellate strategy not to make that argument; this claim, therefore, indicates no deficiency on appellate counsel's part.

**7. Failure to Advise Regarding Plea Offer**

Finally, under ground seven, Petitioner alleges that his trial counsel failed to adequately advise him as to his potential plea offer. (Docket No. 1 at 29–31.) He claims that his counsel told him the lowest plea offer was for twenty-four years and that he later learned that the plea

offer was actually for sixteen years, which he claims he would have taken. (Id. at 30.) In response, Respondent provides an excerpt of a status-conference transcript demonstrating that Petitioner received an offer of twenty-four years but that his counsel had explained that with "different calculations" the sentence would be closer to "16 or 17 years." (Docket No. 3 at 19–20; see also Crim. No. 03-361, Docket No. 1012 at 4–5.) In reply, Petitioner admits that his counsel mentioned the sixteen-year offer but described it as a cooperation agreement; Petitioner claims that had counsel informed him that the offer did not require his cooperation with the government, he would have accepted it. (Docket No. 4 at 9.) On the basis of this back-and-forth, we find incredible Petitioner's initial assertion that he had never heard of an offer lower than twenty-four years. And, on the basis of the transcript excerpt, we find incredible Petitioner's claim that the sixteen-year offer would have required his cooperation with the government, as counsel during the hearing mentioned no such qualification.

Petitioner also claims he would have taken a straight plea had he known that was a possibility. (Docket No. 1 at 30–31.) He does not explain why he would have made a straight plea, though he intimates that he would have preferred a straight plea over entering into an agreement with the government. We find that assertion incredible, as a straight plea would have resulted in a longer sentence than that he would have been recommended in a plea agreement.

## IV.

## Certificate of Appealability

In accordance with Rule 11 of the Rules Governing § 2255 Proceedings, whenever we deny § 2255 relief, we must concurrently determine whether to issue a certificate of

appealability ("COA"). We grant a COA only upon "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make this showing, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." Miller-El v. Cockrell, 537 U.S. 322, 338 (2003) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)). We see no way in which a reasonable jurist could find our assessment of Petitioner's constitutional claims debatable or wrong. Petitioner may request a COA directly from the First Circuit, pursuant to Rule of Appellate Procedure 22.

## V.

## Conclusion

For the foregoing reasons, we **DENY** Petitioner's § 2255 petition (Docket No. 1). Pursuant to Rule 4(b) of the Rules Governing § 2255 Proceedings, we summarily dismiss Petitioner's claims because it is plain from the record that he is entitled to no relief.

**IT IS SO ORDERED**.

San Juan, Puerto Rico, this 7th day of July, 2011.

s/José Antonio Fusté
JOSE ANTONIO FUSTE
United States District Judge